IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEBORAH HANSLER,                )
                               )
          Plaintiff            )    Civil Action
                               )    No. 13-cv-03924
     v.                        )
                               )
LEHIGH VALLEY HEALTH NETWORK,  )
                               )
          Defendant            )


                    *    *    *

APPEARANCES

     SAMUEL A. DION, ESQUIRE
          On Behalf of Plaintiff

     ANDREA M. KIRSHENBAUM, ESQUIRE
     A. JAMES JOHNSTON, ESQUIRE
          On Behalf of Defendant

                    *    *    *

**O P I N I O N**

JAMES KNOLL GARDNER
United States District Judge




                [SPACE INTENTIONALLY LEFT BLANK]

## TABLE OF CONTENTS

**Page**

**SUMMARY OF DECISION** ........................................ 3

**JURISDICTION** .............................................. 4

**VENUE** .................................................... 4

**PROCEDURAL HISTORY** ........................................ 5

**STANDARD OF REVIEW** ........................................ 7

**FACTS** ................................................... 10

**PLAINTIFF'S CLAIMS** ....................................... 13

**DISCUSSION** .............................................. 13

   **FMLA Interference Claim** ............................... 15

      Serious Health Condition ............................ 17

      Certification ....................................... 20

      Extended Period of Time ............................. 24

      Insufficient or Negative Certification ............... 28

   **FMLA Retaliation Claim** ............................... 33

   **Forecast of Evidence** ................................. 35

   **Further Amendment** .................................... 39

**CONCLUSION** .............................................. 39

This matter is before the court on the Motion to Dismiss Plaintiff's Second Amended Civil Action Complaint, which motion was filed by defendant Lehigh Valley Health Network ("LVHN") on September 11, 2013 (Document 18).[1]

## SUMMARY OF DECISION

For the reasons expressed below, I grant defendant's motion to dismiss.

Specifically, I grant defendant's motion to the extent that it seeks to dismiss plaintiff's claim that defendant LVHN violated the Family and Medical Leave Act, 29 U.S.C. §§ 2601-2654 ("FMLA"), by failing to give plaintiff Deborah Hansler an opportunity to cure any deficiencies in the medical certification provided by her to defendant in support of her request for FMLA leave, and by denying plaintiff's request for FMLA leave.  I do so because the medical certification was negative on its face

---

[1]         The within motion was filed together with Defendant's Memorandum of Law in Support of Its Motion to Dismiss Plaintiff's Second Amended Civil Action Complaint (Document 18-1)("Defendant's Memorandum").

Plaintiff filed a Brief in Opposition to Motion to Dismiss on October 23, 2013 (Document 23), together with Exhibit A to Plaintiff's Brief, a copy of 7-165 Labor and Employment Law § 165.08 (Matthew Bender & Company, Inc. 2013)(Document 23).

On November 14, 2013, Defendant Lehigh Valley Health Network's Reply Memorandum of Law in Further Support of Its Motion to Dismiss Plaintiff's Second Amended Civil Action Complaint (Document 27) (Defendant's Reply Memorandum") was filed.

and defendant was, therefore, entitled to rely on certification and deny plaintiff's request for FMLA leave.

Furthermore, I grant defendant's motion to the extent that it seeks to dismiss plaintiff's claim that defendant violated the FLMA by firing her in retaliation for her request for FMLA leave because plaintiff's leave request was invalid in that the medical certification submitted in support of plaintiff's leave request, as explained below, did not demonstrate that she was entitled to FMLA leave.

## JURISDICTION

This court has subject matter jurisdiction over plaintiff's claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2).

## VENUE

Venue is proper because the sole defendant resides within this judicial district, see 28 U.S.C. § 1391(b)(1), (c)(2), and because the events giving rise to these claims occurred in Lehigh County, Pennsylvania, which is located in this judicial district.  See 28 U.S.C. §§ 118, 1391(b)(2).

## **PROCEDURAL HISTORY**

Plaintiff Deborah Hansler initiated this action against defendant LVHN by filing a Civil Action Complaint on July 5, 2013.[2]

On July 17, 2013, plaintiff filed a First Amended Civil Action Complaint ("First Amended Complaint").[3]  Defendant filed a motion to dismiss plaintiff's First Amended Complaint on August 19, 2013.[4]

On August 23, 2013, plaintiff filed a motion seeking leave of court to further amend her First Amended Complaint,[5] and separately filed a brief in opposition to defendant's motion to dismiss her First Amended Complaint.[6]

By Order dated and filed August 30, 2013,[7] I granted plaintiff's motion for leave to amend as uncontested.  Accordingly, plaintiff's Second Amended Civil Action Complaint was filed August 30, 2013 ("Second Amended Complaint").[8]

---

[2]         Document 1.

[3]         Document 2.

[4]         Document 11.

[5]         Document 12.

[6]         Document 14.

[7]         Document 16.

[8]         Document 17.

On September 11, 2013, defendant filed the motion to dismiss plaintiff's Second Amended Complaint, which (after having been reinstated as described below) is the subject of this Opinion and accompanying Order.[9]

By Order dated and filed October 1, 2013 and for the reasons expressed therein,[10] I granted defendant's second motion to dismiss as uncontested, dismissed the Second Amended Complaint, and directed that this case be closed.

On October 3, 2013 plaintiff filed a motion[11] seeking relief from my October 1, 2013 Order.  By Order dated October 21, 2013 and filed October 22, 2013,[12] and for the reasons expressed therein, I granted plaintiff's motion for relief, vacated the October 1, 2013 Order of dismissal, reinstated defendant's motion to dismiss the Second Amended Complaint, gave plaintiff until November 8, 2013 to file a response to the motion to dismiss, and directed that this case be re-opened.

---

[9]        Document 18.

[10]       Document 19.

[11]       Document 20.

[12]       Document 22.

Plaintiff filed her brief in opposition[13] to the within motion to dismiss on October 23, 2013.  On November 14, 2013, with leave of court, defendant filed a reply memorandum in further support of its motion to dismiss plaintiff's Second Amended Complaint.[14]

Hence this Opinion.

### STANDARD OF REVIEW

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted."  A Rule 12(b)(6) motion requires the court to examine the sufficiency of the complaint.  Conley v. Gibson, 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80, 84 (1957) (abrogated in other respects by Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).  Generally, in ruling on a motion to dismiss, the court relies on the complaint, attached exhibits, and matters of public record, including other judicial proceedings.  Sands v. McCormick, 502 F.3d 263, 268 (3d Cir. 2008).

Except as provided in Federal Rule of Civil Procedure 9, a complaint is sufficient if it complies with Rule 8(a)(2), which requires "a short and plain statement

---

[13]      Document 23.

[14]      Document 27.

of the claim showing that the pleader is entitled to relief".  Rule 8(a)(2) does not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.  _Twombly_, 550 U.S. at 570, 127 S.Ct. at 1974, 167 L.Ed.2d at 949.[15]

In determining whether a complaint is sufficient, the court must accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading, the plaintiff may be entitled to relief.  _Fowler_, 578 F.3d at 210 (citing _Phillips v. County of Allegheny_, 515 F.3d 224, 233 (3d Cir. 2008)).

Although "conclusory" or "bare-bones allegations" will not survive a motion to dismiss, _Fowler_, 578 F.3d at 210, a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits.  _Phillips_, 515 F.3d at 231.  Nonetheless, to survive a Rule 12(b)(6) motion, the complaint must provide "enough facts

---

[15]        The United States Supreme Court's Opinion in _Ashcroft v. Iqbal_, 556 U.S. 662, 684, 129 S.Ct. 1937, 1953, 173 L.Ed.2d 868, 887 (2009), states clearly that the "facial plausibility" pleading standard set forth in _Twombly_ applies to all civil suits in the federal courts. _Fowler v. UPMC Shadyside_, 578 F.3d 203, 210 (3d Cir. 2009).  This showing of facial plausibility that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged", and that plaintiff is entitled to relief.  _Fowler_, 578 F.3d at 210 (quoting _Iqbal_, 556 U.S. at 678, 129 S.Ct. at 1949, 173 L.Ed.2d at 884).

to raise a reasonable expectation that discovery will reveal evidence of the necessary element." <u>Phillips</u>, 515 F.3d at at 234 (quoting <u>Twombly</u>, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940) (internal quotations omitted).

The court is required to conduct a two-part analysis when considering a Rule 12(b)(6) motion.  First, the factual matters averred in the complaint, and any attached exhibits, should be separated from legal conclusions asserted.  <u>Fowler</u>, 578 F.3d at 210.  Any facts pled must be taken as true, and any legal conclusions asserted may be disregarded.  <u>Id.</u> at 210-211.

Second, the court must determine whether those factual matters averred are sufficient to show that the plaintiff has a "plausible claim for relief."  <u>Fowler</u>, 578 F.3d at 211 (quoting <u>Iqbal</u>, 556 U.S. at 679, 129 S.Ct. at 1950, 178 L.Ed.2d at 884).

Ultimately, this two-part analysis is "context-specific" and requires the court to draw on "its judicial experience and common sense" to determine if the facts pled in the complaint have "nudged [plaintiff's] claims" over the line from "[merely] conceivable [or possible] to plausible."  <u>Iqbal</u>, 556 U.S. at 679-680, 129 S.Ct. at 1949-1951, 178 L.Ed.2d at 884-885.

A well-pled complaint may not be dismissed simply because "it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." Twombly, 550 U.S. at 556, 127 S.Ct. at 1965, 167 L.Ed.2d at 940-941 (internal quotations omitted).

## FACTS

Taking all of the well-pled facts contained in the Second Amended Complaint as true, as I am required to do under the standard of review applicable to a motion to dismiss, discussed above, the facts of this case are as follows.

Plaintiff Deborah Hansler is an adult individual who resides in the Borough of Northampton, Northampton County, Pennsylvania.  On January 2, 2011 plaintiff began work as a Technical Partner at the Muhlenberg Campus of defendant Lehigh Valley Health Network ("LVHN").[16] Plaintiff worked more than 1250 hours for defendant LVHN in the 12-month period preceding March 11, 2013.  Defendant LVHN is engaged in commerce and employs more than 50 people.[17]

---

[16]        Second Amended Complaint at ¶¶ 1-3.

[17]        Id. at ¶¶ 4-5.

On March 1, 2013 plaintiff began experiencing shortness of breath, nausea, and vomiting.  Although plaintiff avers that those were not the only symptoms from which she suffered, she identifies no other such symptoms in her Second Amended Complaint.[18]

On March 13, 2013 plaintiff's physician completed a Family and Medical Leave Act Written Request Form which sought intermittent leave, two times per week beginning March 1, 2013 and "lasting for a probable duration of one month or until about April 1, 2013."[19]  March 13, 2013 was the first of five days in March 2013 on which plaintiff was unable to work because of the severity of the symptoms mentioned above.  Plaintiff was unable to work, and absent from work at LVHN, on March 13-14 and 23-25, 2013.[20]

Defendant LVHN terminated plaintiff's employment at the end of her shift on March 28, 2013 because of her absences from work on March 13-14 and 23-25, 2013.[21]

At that time she was fired, plaintiff reminded defendant that she had applied for FMLA leave.  At that

---

[18]      Second Amended Complaint at ¶ 6.

[19]      Id. at ¶ 7.

[20]      Id. at ¶ 8.

[21]      Id. at ¶ 9.

time, plaintiff was informed that her March 13, 2013
request for FMLA leave was denied.

After her employment was terminated, plaintiff
saw for the first time a letter dated March 26, 2013 which
stated, in pertinent part, that her "family/medical leave
of absence (FMLA) for the period of 3/1/13-3/11/13" was
denied because "[her] condition presently [did] not qualify
as a serious health condition under the criteria set forth
by the Family and Medical Leave Act."[22]

Defendant LVHN did not follow up with plaintiff's
physician or with plaintiff herself concerning plaintiff's
condition between March 13, 2013 (when she applied for FMLA
leave) and March 28, 2013 (when she was fired and informed
that her FMLA leave request was denied).[23]

In early April 2013, after she was fired by
defendant LVHN, plaintiff was diagnosed with diabetes and
high blood pressure, which conditions were then determined
to be the cause of the symptoms plaintiff was suffering
during the previous month when she was absent from work.
These conditions require plaintiff to visit a health care
provider at least twice per year, and her physician placed
her on a plan of continuing treatment.  Plaintiff's

---

[22]          Second Amended Complaint at ¶ 11.

[23]          Id. at ¶ 13.

diabetes and high blood pressure are chronic and permanent, and may periodically incapacitate plaintiff when they flare up.[24]

## PLAINTIFF'S CLAIMS

Plaintiff claims that defendant violated the FMLA by wrongfully interfering with her rights under that statute (and the regulations promulgated pursuant to it) by failing to provide plaintiff with seven days to cure any deficiencies in the medical certification and FMLA-leave-request form submitted to defendant by plaintiff, and later by denying plaintiff's request for FMLA leave.[25]

Additionally, plaintiff claims that defendant violated the FMLA by firing her in retaliation for requesting and/or taking FMLA-protected leave.[26]

## DISCUSSION

The United States Court of Appeals for the Third Circuit has described the purposes of the Family and Medical Leave Act as follows:

> The stated purposes of the FMLA are to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1) and (2). The FMLA seeks to accomplish these purposes "in a manner that

---

[24]      Second Amended Complaint at ¶¶ 6, and 20-23.

[25]      Id. at ¶¶ 26 and 30.

[26]      Id. at ¶¶ 27-28.

accommodates the legitimate interests of
employers." 29 U.S.C. § 2601(b)(3). In
furtherance of these objectives, the FMLA
requires that "an eligible employee shall be
entitled to a total of twelve workweeks of leave
during any twelve month period" if the employee
has a "serious health condition that makes the
employee unable to perform the functions of the
position of such employee." 29 U.S.C.
§ 2612(a)(1)(D). After an eligible employee
returns from an FMLA leave, the employee is
entitled to be reinstated to his or her former
position, or an equivalent one. 29 U.S.C.
§ 2614(a)(1).

Conoshenti v. Public Service Electric & Gas Company,

364 F.3d 135, 140-141 (3d Cir. 2004).

The pertinent provision in the FMLA prohibiting

interference with an individual's rights provides:

(a) Interference with rights

(1) Exercise of rights

It shall be unlawful for any employer to
interfere with, restrain, or deny the
exercise of or the attempt to exercise, any
right provided under this subchapter.

(2) Discrimination

It shall be unlawful for any employer to
discharge or in any other manner
discriminate against any individual for
opposing any practice made unlawful by this
subchapter.

29 U.S.C.A. § 2615(a).

The regulations promulgated by the Department of

Labor pursuant to the FMLA provide, in pertinent part:

-14-

(a) The FMLA prohibits interference with an employee's rights under the law, and with legal proceedings or inquiries relating to an employee's rights. More specifically, the law contains the following employee protections:

(1) An employer is prohibited from interfering with, restraining, or denying the exercise of (or attempts to exercise) any rights provided by the Act.

\*   \*   \*

(b) *Any violations of the Act or of these regulations constitute interfering with*, restraining, or denying the exercise of *rights provided by the Act*. An employer may be liable for compensation and benefits lost by reason of the violation, for other actual monetary losses sustained as a direct result of the violation, and for appropriate equitable or other relief, including employment, reinstatement, promotion, or any other relief tailored to the harm suffered.

(c) The *Act's prohibition against interference prohibits an employer from* discriminating or *retaliating against an employee* or prospective employee *for having* exercised or *attempted to exercise FMLA rights*.

29 C.F.R. § 825.220(a)-(c)(emphasis added).

The FMLA expressly provides an employee with a civil cause of action which may be asserted against her employer for violations of section 2615. 29 U.S.C. § 2617(a)-(b).

## FMLA Interference Claim

Plaintiff claims that defendant wrongfully interfered with her FMLA rights by failing to provide her

with seven days to cure any deficiencies in the medical
certification and FMLA-leave-request form submitted to
defendant by plaintiff, and then by denying her request for
FMLA leave.[27]

In support of her claims, plaintiff contends that
she qualified for FMLA leave based upon the chronic
conditions of diabetes and high blood pressure.[28]  However,
plaintiff avers that she was not diagnosed with diabetes
and high blood pressure until early April 2013, after she
was fired and her FMLA leave request was denied by
defendant LVHN in late March 2013.[29]

To state and prove an FMLA interference claim, an
employee-plaintiff needs to show that she was entitled to
benefits under the FMLA and that she was denied them.
Sommer v. The Vanguard Group, 461 F.3d 397, 399 (3d Cir.
2006).

Specifically, a plaintiff must aver sufficient
facts to show that: (1) she was an eligible employee under
the FMLA; (2) defendant was an employer subject to the
FMLA's requirements; (3) she was entitled to FMLA leave;
(4) she gave notice to the employer of her intention to

_____

[27]        Second Amended Complaint at ¶¶ 26 and 30.

[28]        Id. at ¶¶ 6 and 20-23.

[29]        See id. at ¶ 6.

take FMLA leave; and (5) she was denied benefits to which
he was entitled under the FMLA.  Mascioli v. Arby's
Restaurant Group, Inc., 610 F.Supp.2d 419, 429-430 (W.D.Pa.
2009).

As the United States Court of Appeals for the
Third Circuit has explained, "[a]n interference action is
not about discrimination, it is only about whether the
employer provided the employee with the entitlements
guaranteed by the FMLA."  Callison, 430 F.3d 117, 119-120
(3d Cir. 2005).

Here, defendant does not seek to dismiss
plaintiff's Second Amended Complaint based upon any alleged
failure by plaintiff to sufficiently plead her status as an
eligible employee or to sufficiently plead defendant's
status as an employer subject to the FMLA.

### Serious Health Condition

The FMLA defines "serious health condition" as
"an illness, injury, impairment, or physical or mental
condition that involves -- (A) inpatient care in a
hospital, hospice, or residential medical care facility; or
(B) continuing treatment by a health care provider."
29 U.S.C. § 2611(11).

Plaintiff does not contend that she demonstrated
to defendant a serious health condition based upon having

received inpatient care.  Rather, plaintiff contends that
she demonstrated a serious health condition based upon her
need for "continuing treatment by a health care provider".

The regulations promulgated by the United State
Department of Labor pursuant to the FMLA further define
"continuing treatment by a health care provider" to include
any one of the following situations:

> (1) Incapacity and treatment.  A period of
> incapacity of more than three consecutive, full
> calendar days,[30] and any subsequent treatment or
> period of incapacity relating to the same
> condition, that also involves:
>
> > (i) Treatment two or more times, within 30
> > days of the first day of incapacity, unless
> > extenuating circumstances exist, by a health
> > care provider, by a nurse under direct
> > supervision of a health care provider, or by
> > a provider of health care services (e.g.,
> > physical therapist) under orders of, or on
> > referral by, a health care provider; or
> >
> > (ii) Treatment by a health care provider on
> > at least one occasion, which results in a
> > regimen of continuing treatment under the
> > supervision of the health care provider.
> >
> > (iii) The requirement in paragraphs (i) and
> > (ii) of this definition for treatment by a
> > health care provider means an in-person
> > visit to a health care provider. The first
> > in-person treatment visit must take place

---

[30]     Plaintiff does not contend (and the facts pled in the
Second Amended Complaint do not support an inference) that she was
incapacitated and absent from work for a period of more than three
consecutive, full calendar days.  Rather, plaintiff contends that she
satisfies the definition of "continuing treatment by a health care
provider" based upon a chronic condition under 29 C.F.R. § 825.102(3),
which is quoted below.

within seven days of the first day of
incapacity.

(iv) Whether additional treatment visits or
a regimen of continuing treatment is
necessary within the 30-day period shall be
determined by the health care provider.

(v) The term "extenuating circumstances" in
paragraph (i) means circumstances beyond the
employee's control that prevent the follow-
up visit from occurring as planned by the
health care provider. Whether a given set of
circumstances are extenuating depends on the
facts. See also § 825.115(a)(5).

                    *    *    *

(3) Chronic conditions.  Any period of incapacity
or treatment for such incapacity due to a chronic
serious health condition.  *A chronic serious
health condition is one which:*

*(i) Requires periodic visits (defined as at
least twice a year) for treatment by a
health care provider, or by a nurse under
direct supervision of a health care
provider;*

*(ii) Continues over an extended period of
time (including recurring episodes of a
single underlying condition); and*

*(iii) May cause episodic rather than a
continuing period of incapacity (e.g.,
asthma, diabetes, epilepsy, etc.).*

                    *    *    *

29 C.F.R. § 825.102 (emphasis added); see also id.,

§ 825.115(a),(c).

        The operative time for determining whether a

particular condition qualifies for FMLA purposes is the

                        -19-

time that leave is requested or taken.  Navarro v. Pfizer
Corporation, 261 F.3d 90, 96 (1st Cir. 2001); see Patton v.
eCardio Diagnostics LLC, 793 F.Supp.2d 964, 967 (S.D.Tx.
2011)(citing Navarro, supra), and Yansick v. Temple
University Health System, 2006 U.S.Dist. LEXIS 53789, at
*43 n.26 (E.D.Pa. Aug. 3, 2006)(Joyner, J.).

### Certification

The regulations promulgated pursuant to the FMLA
provide that "[a]n employer may require that an employee's
leave ... due to the employee's own serious health
condition that makes the employee unable to perform one or
more of the essential functions of the employee's position,
be supported by a certification issued by the health care
provider of the employee ...."  29 C.F.R. § 825.305(a).

Plaintiff avers that she provided a medical
certification of a physician to defendant in support of her
request for FMLA leave.  That certification is the crux of
the parties dispute on the within motion to dismiss.

The FMLA states, in pertinent part, that a
certification provided in support of leave request shall be
sufficient if it states:

(1) the date on which the serious health
condition commenced;

(2) the probable duration of the condition;

(3) the appropriate medical facts within the knowledge of the health care provider regarding the condition;

(4)(A) for purposes of leave under section 2612(a)(1)(C) of this title, a statement that the eligible employee is needed to care for the son, daughter, spouse, or parent and an estimate of the amount of time that such employee is needed to care for the son, daughter, spouse, or parent; and (B) for purposes of leave under section 2612(a)(1)(D) of this title [pertaining to leave for serious medical conditions of the employee], a statement that the employee is unable to perform the functions of the position of the employee;

(5) in the case of certification for intermittent leave, or leave on a reduced leave schedule, for planned medical treatment, the dates on which such treatment is expected to be given and the duration of such treatment;

(6) in the case of certification for intermittent leave, or leave on a reduced leave schedule, under section 2612(a)(1)(D) of this title [pertaining to leave for serious medical conditions of the employee], a statement of the medical necessity for the intermittent leave or leave on a reduced leave schedule, and the expected duration of the intermittent leave or reduced leave schedule; and

(7) in the case of certification for intermittent leave, or leave on a reduced leave schedule, under section 2612(a)(1)(C) of this title, a statement that the employee's intermittent leave or leave on a reduced leave schedule is necessary for the care of the son, daughter, parent, or spouse who has a serious health condition, or will assist in their recovery, and the expected duration and schedule of the intermittent leave or reduced leave schedule.

29 U.S.C. § 2613(b).

The FMLA regulations address the issue of deficiencies with an employee's certification offered in support of an FMLA leave request:

> The employee must provide a complete and sufficient certification to the employer if required by the employer.... The employer shall advise an employee whenever the employer finds a certification incomplete or insufficient, and shall state in writing what additional information is necessary to make the certification complete and sufficient. *A certification is considered incomplete if the employer receives a certification, but one or more of the applicable entries have not been completed. A certification is considered insufficient if the employer receives a complete certification, but the information provided is vague, ambiguous, or non-responsive.*

29 U.S.C. § 825.305(c)(emphasis added).

If an employee's certification is incomplete or insufficient, the regulations provide that

> [t]he employer must provide the employee with seven calendar days (unless not practicable under the particular circumstances despite the employee's diligent good faith efforts) to cure any such deficiency. If the deficiencies specified by the employer are not cured in the resubmitted certification, the employer may deny the taking of FMLA leave, in accordance with § 825.313. A certification that is not returned to the employer is not considered incomplete or insufficient, but constitutes a failure to provide certification.

29 U.S.C. § 825.305(c)(emphasis added).

As noted above, plaintiff claims that defendant LVHN interfered with her FMLA rights by failing to provide

plaintiff with seven days, pursuant to 29 C.F.R.
§ 825.305(c), to cure any deficiencies in the medical
certification and FMLA-leave-request form submitted to
defendant by plaintiff.[31]  The implicit contention
underlying plaintiff's interference claim is that the
plaintiff's supporting medical certification was
insufficient (rather than negative on its face).[32]

Defendant LVHN contends that this interference
claim fails as a matter of law and must be dismissed
because plaintiff's supporting certification was negative
on its face (rather than insufficient, as plaintiff
implicitly contends).  More specifically, defendant
contends that plaintiff's medical certification was
negative on its face because "a probable duration of one
month" does not amount to "an extended period of time" as

---

[31]        Second Amended Complaint at ¶ 26.

[32]        Neither plaintiff's factual averments in her Second Amended
Complaint, nor Plaintiff's Brief, suggest that some section or portion
of the medical certification or plaintiff's FMLA-leave-request form was
not filled out -- that is, they do not suggest that the certification
and/or leave-request forms were incomplete under 29 U.S.C.
§ 825.305(c).

        Rather, plaintiff "admits that her original physician's
certification *may have been insufficient* in that a diagnosis was not
provided, but that she was entitled to seven days to correct any
deficiency" pursuant to 29 U.S.C. § 825.305(c).  (Plaintiff's Brief at
page 9 (emphasis added).)

required to qualify for a chronic serious health condition
under 29 C.F.R. § 825.115(c).[33]

Extended Period of Time

A chronic serious health condition under the FMLA
regulations is one which, among other things, "[c]ontinues
over an extended period of time".  29 C.F.R.
§ 825.115(c)(2).

While the FMLA and regulations do not define the
term "extended period of time", "the language of the FMLA
itself, its legislative history, and the regulations
promulgated pursuant to that statute all suggest that to
constitute a 'chronic' illness, the condition must exist
for well more than a few weeks."  Taylor v. Autozoners,
LLC, 706 F.Supp.2d 843, 852 (W.D. Tenn. 2010)(quoting
Flanagan v. Keller Products, Inc., 2002 WL 313138, at *7
(D.N.H. Feb. 25, 2002)).

As noted in the Flanagan case, Stedman's Medical
Dictionary defines "chronic" as "1.  Referring to a health
related state, lasting a long time.  2.  Referring to
exposure, prolonged or long-term, sometimes meaning low
intensity.  3.  The U.S. National Center for Health
Statistics *defines a chronic condition as one of three*

---

[33]      See Defendant's Memorandum at pages 12-14; Defendant's
Reply Memorandum at pages 6-7.

*months' duration or longer*."   Flanagan, 2002 WL 313138,

at *21 (quoting Stedman's Medical Dictionary (26th ed.

1995))(emphasis in original).

The National Center for Chronic Disease

Prevention and Health Promotion -- which is a part of the

Centers for Disease Control and Prevention within the

Department of Health and Human Services -- describes

chronic diseases as follows:

> Chronic diseases are noncommunicable illnesses
> that are *prolonged in duration*, do not resolve
> spontaneously, and are *rarely cured completely*.
> Examples of chronic diseases include heart
> disease, cancer, stroke, *diabetes*, and
> arthritis.[34]

The FMLA regulations list "asthma, diabetes,

[and] epilepsy" as illustrative examples of chronic serious

health conditions.   29 C.F.R. § 825.115(c).

In Victorelli v. Shadyside Hospital, 128 F.3d 184

(3d Cir. 1997), the United States Court of Appeals for the

Third Circuit held that "the three year duration of

[plaintiff]'s condition constitutes an extended period of

time" for purposes of determining whether plaintiff

suffered from a chronic serious health condition.   Id. at

189.

---

[34]        National Center for Chronic Disease Prevention and Health
Promotion, Centers for Disease Control and Prevention, Chronic Diseases
-- The Power to Prevent, The Call to Control: At a Glance 2009,
*available at* http://www.cdc.gov/chronicdisease/resources/publications/
aag/chronic.htm (last visited March 4, 2014).

In <u>Pinson v. Berkely Medical Resources, Inc.</u>,
2005 WL 3210950, at *15-16 (W.D.Pa. June 21, 2005)
(Hardiman, J.), then-District, and now-Circuit, Judge
Hardiman denied defendant's motion for summary judgment
because a reasonable factfinder could have found a chronic
serious health condition where the employee-plaintiff's
severe back pain had not improved with treatment for a
period of a year and a half -- in other words, that a year
and a half would constitute an extended period of time.
<u>See Pinson</u>, 2005 WL 3210950, at *15-16.

Similarly, in <u>Schley v. Gloucester Refrigerated
Warehouse, Inc.</u>, 2007 WL 1237788, at *3-4 (D.N.J. Apr. 26,
2007), the district court denied a defense motion for
summary judgment because, concerning the "extended period
of time" issue, plaintiff's physician indicated that
plaintiff had been receiving ongoing treatment for multiple
conditions for a seven-year period.  <u>Id.</u>

Here, it is undisputed that plaintiff has been
diagnosed with high blood pressure and diabetes and
defendant does not argue that those conditions are not
chronic in nature.  However, it is similarly undisputed
that she was not diagnosed with either of those conditions
until early April 2013, after she was fired by defendant

LVHN and her FMLA leave request was denied in late March 2013.

Accordingly, it follows (and is similarly undisputed) that defendant LVHN had not been informed, through plaintiff's medical certification (or any other means) of plaintiff's diagnosis with diabetes and high blood pressure prior to (or at the time of) its decision in late March 2013 to terminate plaintiff's employment and deny her FMLA leave request.

Instead, taking plaintiff's well-pled facts as true, and drawing all reasonable inferences from those facts (as required by the applicable standard of review, described above), at the time she made her request for FMLA leave and the time that request was denied, plaintiff had informed defendant that (1) she was experiencing shortness of breath, nausea, and vomiting; and (2), according to her physician's certification, she required intermittent leave, twice per week for a period of about one month.

Although the timing of events for plaintiff was, without question unfortunate, the fact remains that her diagnosis with diabetes and high blood pressure did not occur until after her leave request was denied and she was fired by defendant. And, while, in retrospect, the symptoms of which plaintiff informed defendant in her FMLA

-27-

leave request were later deemed to be attributable to diabetes and high blood pressure, defendant was entitled to rely on the information presented to it in assessing plaintiff's eligibility for FMLA leave based upon a chronic serious health condition.

<u>Insufficient or Negative Certification</u>

This brings us to the disputed question of whether the medical certification provided in support of plaintiff's FMLA leave request was insufficient (as plaintiff contends) or negative on its face (as defendant contends).

A "negative certification" is "one that facially demonstrated that an absence was not FMLA-qualifying." <u>Verkade v. United States Postal Service</u>, 378 Fed.Appx. 567, 574 (6th Cir. 2010)(citing <u>Stoops v. One Call Communications, Inc.</u>, 141 F.3d 309, 311 (7th Cir. 1998)).

"In general, if an employer lacks sufficient information about an employee's reason for taking leave, it should inquire further to ascertain whether the employee's leave was potentially FMLA-qualifying." <u>Nawrocki v. United Methodist Retirement Communities, Inc.</u>, 174 Fed.Appx. 334, 338 (6th Cir. 2006). "Once an employer is given notice that an employee is requesting leave for a FMLA-qualifying reason, the employer bears the obligation to collect any

-28-

additional information necessary to make the leave comply

with the requirements of the FMLA." Nawrocki,

174 Fed.Appx. at 338.

However, as recognized by the Sixth Circuit in

Nawrocki, supra, in the Stoops case, the United States

Court of Appeals for the Seventh Circuit held that

> [w]here an employer properly requests a
> physician's certification under the FMLA and that
> certification indicates the employee is not
> entitled to FMLA leave, the employer does not
> violate the FMLA by relying upon that
> certification in the absence of some overriding
> medical evidence.  And that medical evidence
> should come from the employee in time to save his
> job, not during a subsequent law suit.

Stoops, 141 F.3d at 314; see Sicoli v. Nabisco Biscuit

Company, 1998 WL 297639, at *13 (E.D.Pa. June 8, 1998)

(Hutton, J.)(quoting Stoops, supra).

In Verkade, the Sixth Circuit further explained

that incomplete and insufficient medical certifications are

not the same as negative certifications, and that Stoops

and Nawrocki stand for the proposition that "certifications

that, on their face, show that the employee is not entitled

to FMLA protection may be relied upon to deny FMLA leave

without further inquiry by the employer." Verkade,

378 Fed.Appx. at 574 (citing Hoffman v. Professional Med

Team, 394 F.3d 414, 418-419 (6th Cir. 2005)).

Here, the facts averred in the Second Amended Complaint, as well as plaintiff's argument in opposition to the within motion to dismiss, do not support a reasonable inference that the medical certification submitted in support of plaintiff's FMLA leave request was incomplete.

Plaintiff argues that the certification may have been insufficient because it did not contain plaintiff's diagnosis of diabetes and high blood pressure, which was made in early April 2013 and determined (at that time) to be the cause of the symptoms plaintiff was experiencing in March 2013.

However, it is not the absence of a definitive diagnosis that renders the certification negative on its face. Rather, given that plaintiff's sole basis for claiming eligibility for FMLA leave is her purported demonstration of a chronic serious health condition, it is the absence of information in the certification suggesting that plaintiff suffered from a condition which would "[c]ontinue[] over an *extended period of time* (including recurring episodes of a single underlying condition)", 29 C.F.R. § 825.115(c)(2), which rendered the certification negative on its face and, accordingly, permitted defendant to rely on that certification in denying plaintiff's

request for FMLA leave without giving plaintiff notice and
an opportunity to supplement and cure the certification.

In short, because plaintiff contends that her
certification and leave request would only qualify her for
FMLA leave based solely upon a demonstration of a chronic
serious health condition, which is one that (among other
things) will last over an extended period of time; and
because "approximately one month" (the period of time
provided on plaintiff's medical certification) is not an
extended period of time within the meaning of the FMLA and
its regulations, I conclude that plaintiff's certification
demonstrated that she did not (based upon the information
available and provided at the time of her leave request and
its subsequent denial) qualify for FMLA leave based upon a
chronic serious health condition.

Accordingly, I grant defendant's within motion to
dismiss to the extent that it seeks to dismiss plaintiff's
claim that defendant interfered with her FMLA rights by
failing to provide her an opportunity to supplement and
cure the certification submitted in support of her FMLA
leave request.

As noted above, an employee-plaintiff needs to
show that she was entitled to benefits under the FMLA and
that she was denied them in order to state and ultimately

-31-

prove an FMLA interference claim.  Sommer, 461 F.3d at 399.
As also noted above, the operative moment for determining
whether a particular condition qualifies for FMLA purposes
is the time that leave is requested or taken.  Navarro,
261 F.3d at 96.

At the time plaintiff submitted her FLMA leave
request and medical certification to defendant (and at the
time defendant denied her FMLA leave request), she had not
been diagnosed with diabetes or high blood pressure and the
medical certification form submitted by plaintiff suggested
only that she would need intermittent leave two times per
week starting March 1, 2013 and lasting approximately one
month until about April 1, 2013.  In other words, the
certification did not indicate, as discussed further above,
that she was suffering from a condition which would
continue over an extended period of time.

Accordingly, at the time of her FMLA leave
request, as well as the subsequent denial of that request,
plaintiff was not entitled to FMLA based upon a chronic
serious health condition.  Therefore, I grant defendant's
motion to the extent that it seeks to dismiss plaintiff's
claim that defendant interfered with her FMLA rights by
denying her FMLA leave request.

For the reasons expressed above, plaintiff's inter-
ference claim is dismissed in its entirety.

### **FMLA Retaliation Claim**

In addition to her interference claim discussed
above, plaintiff claims that defendant violated the FMLA by
firing her in retaliation for requesting and/or taking
FMLA-protected leave.[35]

Defendant does not address plaintiff's FMLA
retaliation claim separately in its within motion to
dismiss and supporting memorandum or reply memorandum.

In Conoshenti, the Third Circuit Appeal Court
recognized that 29 C.F.R. § 825.220(c), implementing
29 U.S.C. § 2615(a), provides a cause of action under the
FMLA sounding in unlawful retaliation.  Conoshenti,
364 F.3d at 146-147.

In Erdman v. Nationwide Insurance Company,
582 F.3d 500 (3d Cir. 2009), the Third Circuit clarified
its holding in Conoshenti by stating that liability on an
FMLA retaliation claim under circumstances such as those in
this case is predicated on 29 C.F.R. § 825.220(c).  Erdman,
582 F.3d at 508.

To successfully state a retaliation claim under
section 825.220(c) a plaintiff must show that "(1) [she]

---

[35]         Id. at ¶¶ 27-28.

-33-

took an FMLA leave, (2) [she] suffered an adverse employ-
ment decision, and (3) the adverse decision was causally
related to [her] leave." Conoshenti, 364 F.3d at 146.

The Third Circuit further explained in the Erdman
case that the requirement that an employee "take" FMLA
leave is satisfied and triggered by the employee's
invocation of FMLA rights (rather than the actual
commencement of FMLA leave).

Accordingly, the Third Circuit held that "firing
an employee for a *valid request* for FMLA leave may
constitute...retaliation against the employee." Erdman,
582 F.3d at 509 (emphasis added).

The Third Circuit's requirement that an FMLA
leave request be valid in order for that request to form
the basis for a retaliation claim is consistent with
decisions from other circuit courts of appeal. See Pagel
v. TIN Inc., 695 F.3d 622, 631 (7th Cir. 2012); Davis v.
Michigan Bell Telephone Company, 543 F.3d 345, 354
(6th Cir. 2008)(citing Humenny v. Genex Corporation,
390 F.3d 901, 905-06 (6th Cir.2004); Walker v. Elmore
County Board of Education, 379 F.3d 1249, 1253 (11th Cir.
2004); Russell v. North Broward Hospital, 346 F.3d 1335,
1340 (11th Cir. 2003).

-34-

As described in the preceding section concerning plaintiff's FMLA interference claim, plaintiff's FMLA leave request and supporting medical certification were not incomplete or insufficient, and did not demonstrate (at the time of the request of defendant's denial thereof) that plaintiff was entitled to FMLA leave.

Because plaintiff's FMLA leave request was premised upon the existence of a serious chronic health condition and her medical certification was a negative certification with respect to such a condition, plaintiff's leave request was not a valid request entitling her to FMLA leave and, accordingly, may not form the basis for an FMLA retaliation claim.  See Erdman, 582 F.3d at 509.

Accordingly, I grant defendant's within motion to the extent that it seeks to dismiss plaintiff's FMLA retaliation claim.

### Forecast of Evidence

Plaintiff contends that her Second Amended Complaint states a claim because, although she had not been diagnosed with diabetes and high blood pressure at the time she submitted her FMLA leave request (or at the time when she was fired and her leave request denied), "she presents a forecast of evidence in her [S]econd [A]mended [C]omplaint that she was already suffering from these

-35-

chronic conditions when she first requested intermittent FMLA leave."[36]

In support of this argument, plaintiff relies exclusively upon the Opinion of United States District Judge Martin Reidinger in Schuler v. Branch Banking & Trust Co., 2009 U.S.Dist. LEXIS 94043 (W.D.N.C. Oct. 8, 2009) ("Schuler II"), which adopted in part, and rejected in part, the Report and Recommendation of United States Magistrate Judge Dennis L. Howell, Schuler v. Branch Banking & Trust Co., 2009 U.S.Dist. LEXIS 98539 (W.D.N.C. July 27, 2009)("Schuler I").

The court's decision in Schuler II, upon which plaintiff relies in support of her claims here, is distinguishable from the within matter and lacks persuasive force for the reasons set forth by defendant in its memorandum[37] and reply memorandum.[38]

Plaintiff's Brief also notes that Schuler II relied upon the Opinion of the Seventh Circuit Appeals Court in Burnett v. LFW, Inc., 472 F.3d 471 (7th Cir. 2006).[39]

---

[36]     Plaintiff's Brief at page 6.

[37]     Defendant's Memorandum at pages 11-12.

[38]     Defendant's Reply Memorandum at pages 2-5.

[39]     Plaintiff's Brief at pages 4-10.

The Seventh Circuit, discussing Burnett in a later Opinion, stated:

> In Burnett the employee gave "an account of symptoms and complaints, which formed a coherent pattern and progression, beginning with initial symptoms, continuing with doctor's visits, and then additional testing and results — all communicated (in one form or another) to [his supervisor]." This, we held, was sufficient to place the employer on inquiry notice.

Nicholson v. Pulte Homes Corporation, 690 F.3d 819, 827 (7th Cir. 2012)(internal citations omitted).

Specifically, the Seventh Circuit in Burnett described the account given by the employee-plaintiff to his supervisor prior the termination of his employment, stating that

> [o]ver a period of four months, Burnett communicated that: (1) he was suffering from "a weak bladder," which was severe enough to preclude a potential transfer of assignment; (2) he was on a trajectory of increased medical visits and testing, including a blood test showing an elevated PSA; (3) he had recently had a prostate biopsy (a test that [his supervisor] knew was used to diagnose cancer) and requested help in his work duties as a result; (4) he repeatedly stated that he "felt sick" and intimated that his condition may be similar to his brother-in-law's latent prostate cancer; and (5) his concerns were significant enough for him to suggest that he might commit suicide if he ended up bedridden as a result of prostate cancer.

Burnett, 472 F.3d at 480.

While the district court granted the employer-defendant's motion for summary judgment on the ground that Mr. Burnett could not show that he had provided his employer with sufficient notice that he suffered from a serious health condition, id. at 476-477, the Seventh Circuit reversed that grant of summary judgment as to Mr. Burnett's FMLA interference claim because Mr. Burnett had provided the above-described account to his employer in the four-month period prior to his termination on February 2, 2004, despite the fact that Mr. Burnett was not formally diagnosed with prostate cancer until February 10, 2004 (eight days after he was fired).  Burnett, 472 F.3d at 476, 480-481.

To the extent that plaintiff relies upon the Burnett case, it is distinguishable from the facts presented in plaintiff's Second Amended Complaint.

Here, plaintiff simply has not pled facts in her Second Amended Complaint setting forth similar history and progression of her condition, or suggesting that she communicated such a history to her employer so as to place defendant on notice that (despite the absence of a formal diagnosis) she was suffering from diabetes and high blood pressure and, accordingly, entitled to FMLA based upon a chronic serious health condition.

-38-

For these reasons, neither plaintiff's reliance upon Schuler II, nor her passing reference to Burnett, is sufficient to overcome defendant's within motion to dismiss.

## Further Amendment

I dismiss plaintiff's Second Amended Complaint with prejudice and do not grant plaintiff leave to file a fourth iteration of her pleading because plaintiff has not stated a claim despite two prior opportunities to amend her pleading (each in light of a defense motion highlighting alleged deficiencies in the prior pleading).  Moreover, Plaintiff's Brief does not contain a request for leave to further amend nor does it suggest the existence of additional facts which plaintiff could include that would permit plaintiff to successfully state the claims she advanced.

## CONCLUSION

For all of the reasons expressed above, I grant defendant's within motion and dismiss plaintiff's Second Amended Complaint with prejudice.